UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KIMBERLY DIESEL,          )
*individually and on behalf of all others*  )
*similarly situated,*           )
                       )
      Plaintiff,       )
                       )
    v.            )     Case No. 4:22-CV-01368-AGF
                       )
MARIANI PACKING COMPANY, INC.  )
                       )
      Defendant.     )

## MEMORANDUM AND ORDER

Plaintiff Kimberly Diesel filed this putative class-action complaint alleging breach of express warranty and violations under the Missouri Merchandising Practices Act (MMPA).[1]  Plaintiff alleges that Defendant Mariani Packing Company, Inc. (Mariani) misled customers by under-filling their seven ounce bag of Mariani Premium Vanilla Yogurt Raisins (the "Product"), such that the package is only filled to 42% capacity with Vanilla Yogurt Raisins, and contains 58% empty space.  In other words, Plaintiff alleges that the Product contains excessive slack fill.

---

[1]    Plaintiff's complaint also asserts violations of the State Consumer Fraud Acts; implied warranty of merchantability/fitness of a particular purpose; the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; negligent misrepresentation; fraud; unjust enrichment; and breach of express warranty.  Compl., Doc. No. 4.  Plaintiff has informed the Court that she has withdrawn all of these claims, and is now only asserting claims under the MMPA (Count One).  *See* Doc. Nos. 26 at 6 and 35 at 7.

The matter is now before the Court on Plaintiff's motion for class certification. Doc. No. 26.  Plaintiff seeks to certify a class consisting of all persons who purchased the Product in Missouri between November 14, 2017, through the present.[2]  Defendant opposes Plaintiff's motion.  On February 7, 2024, the Court ordered the parties to provide supplemental briefing regarding the impact of the MMPA's 2020 Amendments on class certification.  Doc. No. 34; Mo. Rev. Stat. § 407.025.1.  Specifically, whether the Amendments impacted the predominance analysis and the proposed class time frame.  In her supplemental brief, Plaintiff withdrew her claims for Breach of Express Warranty, thus the only issue before the Court is whether to certify the proposed class under the MMPA.  *See* Doc. No. 35 at 7.

For the reasons set forth below, the Court will grant Plaintiff's motion and certify the proposed class under the MMPA (Count One).

## **BACKGROUND**

The following facts are taken from the Complaint.  Doc. No. 4.  On November 14, 2022, Plaintiff Kimberly Diesel filed this putative class action against Mariani Packing Company, claiming that the excessive slack fill in their seven ounce bag of Vanilla Yogurt Raisins ("Product") misled reasonable consumers, including Plaintiff.  The Product is produced by Defendant Mariani, a California Corporation, and is sold to

---

[2]    Plaintiff's initial complaint also sought the certification of a consumer fraud multi-state class including customers in Illinois, Maryland, Hawaii, New York, Washington D.C., and Connecticut.  *See* Doc. No. 4 at 7.  However, Plaintiff's motion for class certification withdraws all Plaintiff's claims on behalf of the Consumer Fraud Multi-State Class and only seeks the class certification of Missouri customers as set forth above.

consumers online and in grocery stores, big box stores, and convenience stores throughout the country, including in the state of Missouri.

Plaintiff alleges that she purchased the Product at locations including Dierbergs in St. Louis, Missouri in or around October 2022, among other times.  After purchasing the Product, Plaintiff discovered that despite the Product bag being 19.5 centimeters high, the bag is filled to only eight (8) centimeters with vanilla yogurt raisins.  In other words, the Product contains 58% slack fill.  Plaintiff asserts that there is no legitimate reason or recognized "safe-harbor" for the empty space.  *See* 21 C.F.R. § 100.100(a)(1)-(6).

Plaintiff asserts that the packaging is misleading to the reasonable consumer and the value of the Product is materially less than its value as represented by Defendant.

**Proposed Class**

Plaintiff seeks to certify the following class of persons under Rule 23 of the Federal Rules of Civil Procedure:

> All persons who purchased the Vanilla Yogurt Raisins in seven ounce packages [sic][3] sold by Mariani Packing Company, Inc. ("Defendant") in Missouri between November 14, 2017, through present, excluding the judge or magistrate assigned to this case; Defendant; any entity in which Defendant has a controlling interest; Defendant's officers, directors, legal representatives, successors, and assigns; and person who purchased the Product for the purpose of resale.

Doc. No. 26 at 1.

---

[3]     Here, Plaintiff's proposed class erroneously included the phrase "sold by Private Selection Smoked Gouda Slices ("Product").  This appears to be a scrivener's error, likely from a different case, as this matter does not involve Private Smoked Gouda Slices, and other references to the proposed class description by Plaintiff do not include this information.

Plaintiff also seeks to be appointed as class representative and to have Harvath Law Group, LLC and Sheehan & Associates, P.C., appointed as class counsel.

## ARGUMENT OF PARTIES

### Plaintiff's Argument

Plaintiff argues that class certification in this matter is proper because all of the requirements of Fed. R. Civ. P. 23(a)—commonality, typicality, numerosity, and fair and adequate representation—have been satisfied, and common questions predominate, satisfying Rule 23(b)(3). Plaintiff asserts that the issue of whether the container— designed by Defendant so consumers like Plaintiff would expect that it contained more vanilla yogurt raisins than it did—misled or was likely to mislead consumers is the predominate issue in this matter and an issue common to all or a significant number of the putative class members. Plaintiff also argues that damages can be readily assessed on a class wide basis by measuring the amount of price premium inherent in a bag of vanilla yogurt raisins that class members purchased compared to a supposed package fill level of 50% or greater, as represented by Defendant's package design. Plaintiff asserts that these price premiums can be calculated through "conjoint analysis" and "hedonic pricing" tools identified by their financial and statistical expert.

Plaintiff also asserts that she will fairly and adequately protect the interests of the class and her counsel, Harvath Law Group and Sheehan & Associates, should be appointed as class counsel because they are highly experienced in class-action litigation and committed to this cause of action.

Lastly, Plaintiff argues that should the Court conclude that certification under Rule

23(b)(3) is not appropriate, the Court should certify an "issues class" under Rule 23(c)(4) to determine whether Defendant's package design was misleading.

**Defendant's Opposition**

Defendant argues that Plaintiff has failed to demonstrate that class certification is proper in this case. Specifically, Defendant argues that Plaintiff has failed to establish commonality under Rule 23(a) and predominance under Rule 23(b). Defendant does not contest the typicality, numerosity, or adequacy requirements.

Defendant argues that Plaintiff has failed to meet Rule 23(a)'s commonality requirement because resolving the issue of whether Plaintiff and the proposed class members were misled based on the product requires individual factual determinations. Defendant asserts that the individualized inquiries will include (1) whether each putative class member was a repeat customer; (2) whether each putative class member opted for the small size bag after comparison to the larger bag; (3) whether each putative class member noticed the net weight listed on the front of the package before purchasing the product; and (4) whether each putative class member observed the Product's contents through the clear window on the front of the package. Defendant asserts that these inquiries would result in a significant number of discrepancies, creating an overbroad putative class that requires multi-step causation analysis for each class member.

Defendant further contends that since commonality cannot be established, predominance under Rule 23(b), which is a more rigorous standard, also cannot be established. Defendant argues that because Plaintiff failed to establish the requirements under Rule 23(a) and 23(b), the certification of an "issues class" under Rule 23(c)(4) is

improper.

Defendant also argues that Plaintiff's proposed class impermissibly contains individuals who lack standing. Specifically, Defendant argues that Plaintiff's proposed class includes individuals who have no injury—those who have repeatedly purchased and/or have seen the Product prior to purchasing it, and have chosen to purchase it anyway. Defendant argues that because these individuals suffered no injury, they lack standing to bring an MMPA claim.

In its supplemental briefing, Defendant argues that class certification should be denied because: (1) Plaintiff has not acted as a reasonable consumer would in expecting a higher fill level; (2) Plaintiff has not alleged an ascertainable loss; and (3) the causation requirements codified by the 2020 Amendments forecloses predominance because they require an inquiry into whether *each individual* class member knew about the Product's features but decided to purchase the product anyway.

Lastly, Defendant argues that proposed class counsel, Spencer Sheehan, is inadequate to represent the proposed class due to recent and numerous potential sanctions and admonishments for filing dozens of frivolous lawsuits similar to this one. Defendant argues that this lawsuit is another one of Mr. Sheehan's frivolous lawsuits—acting through local counsel—sought to impose exorbitant attorney's fees. Defendant argues that because Plaintiff does not have adequate class counsel, class certification should be denied. In response to this argument, Plaintiff states that even if the Court were to credit Defendant's arguments regarding Mr. Sheehan, the Court should allow this action to proceed with only Daniel Harvath as Plaintiff's class counsel.

6

Additional facts and arguments will be further addressed as they relate to the parties' arguments.

## **LEGAL STANDARD**

"To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)." *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005) (citation omitted).  "A party seeking class certification must affirmatively demonstrate his compliance with Rule 23." *Hudock v. LG Elecs. U.S.A., Inc.*, 12 F.4th 773, 775 (8th Cir. 2021) (internal quotation and citation omitted).

"The district court is accorded broad discretion in deciding whether class certification is appropriate . . . ." *Rattray v. Woodbury Cnty., IA*, 614 F.3d 831, 835 (8th Cir. 2010).  Certification of a class is proper only if, after "rigorous analysis," the Court is satisfied that the Rule 23 requirements are met.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (internal quotation marks and citation omitted).  Although that "rigorous analysis" may frequently entail some overlap with the merits of the underlying claims, *see id.* at 351, "[m]erits questions may be considered only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013).  "[The Court's] primary task is not to determine the final disposition of a plaintiff's claims, but instead to examine whether those claims are appropriate for class resolution." *Postawko v. Missouri Dep't of Corr.*, 910 F.3d 1030, 1037 (8th Cir. 2018).

**Rule 23(a)**

Rule 23(a) allows individuals to sue on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy).  Fed. R. Civ. P. 23(a).

**Rule 23(b)(3) - Predominance**

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members" (predominance), and that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy" (superiority).  Fed. R. Civ. P. 23(b)(3).  "The predominance requirement is 'demanding'; a court considering certification pursuant to Rule 23(b)(3) must take a 'close look at whether common questions predominate over individual ones.'"  *Hudock*, 12 F.4th at 776 (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)).

"Predominance subsumes the commonality requirement, so both can be analyzed through the lens of predominance."  *Custom Hair Designs by Sandy v. Cent. Payment Co., LLC*, 984 F.3d 595, 601 (8th Cir. 2020).  "The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'"  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).  "An individual question is one where members

8

of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 984–85 (8th Cir. 2021).

Moreover, the calculation of damages must be based on a model applicable to all members of the class. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013); *Cromeans v. Morgan Keegan & Co., Inc.*, 303 F.R.D. 543, 559 (W.D. Mo. 2014). If the measure of damages is based on a common model linked to plaintiffs' theory of liability, individual assessments of damages do not erode Rule 23(b)(3)'s predominance factor. *See Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 833 (8th Cir. 2016).

## DISCUSSION

Defendant does not dispute that Plaintiff has demonstrated numerosity, typicality, and adequacy under Rule 23(a). The Court is also satisfied, upon its own independent review, that Plaintiff has met her burden in demonstrating these factors. Defendant argues that Plaintiff has failed to demonstrate commonality under Rule 23(a) and predominance under Rule 23(b).

With respect to commonality, the common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "What matters to class certification is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.

Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (emphasis in original).  Defendant argues that because Plaintiff cannot demonstrate commonality, she likewise cannot demonstrate predominance under Rule 23(b)(3).

Because predominance subsumes the commonality requirement, the Court will address both issues through the lens of predominance.  *See Custom Hair Designs*, 984 F.3d at 601.  Plaintiff contends that there is commonality and predominance because the issue—whether the plastic bag packaging, designed by Defendant, would mislead a reasonable consumer into believing they were purchasing more vanilla yogurt raisins than they received—is an issue whose resolution will affect all members of the putative class. Defendant argues that the question of whether consumers were misled requires multiple individual inquiries that cannot generate a common answer.  As stated above, Defendant asserts these inquiries include: (a) whether each putative class member was a repeat customer or a one-time purchaser; (b) whether each putative class member opted for the small size bag after comparison to the large size bag; (c) whether each putative class member noticed the net weight listed on the front of the package before purchasing the product; and (d) whether each putative class member observed the Product's contents through the clear window on the front of the package.  In other words, Defendant contends that in order to determine whether there was an MMPA violation, the Court must inquire into whether each consumer relied on the packaging design when deciding whether to purchase the Product in order to determine whether there was an MMPA violation.  In its supplemental briefing, Defendant also argues that, on the merits, no

10

reasonable person would be deceived by its packaging so class certification is not proper.

**Missouri Merchandising Practices Act (MMPA)**

The MMPA gives consumers a private right of action to recover damages from

product sellers:

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person or a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages.

Mo. Rev. Stat. § 407.025.1(1). Section 407.020 prohibits "[t]he act, use or employment

by any person of any deception, fraud, false pretense, false promise, misrepresentation,

unfair practice or the concealment, suppression, or omission of any material facts in

connection with the sale or advertisement of any merchandise in trade. . . ." Mo. Rev.

Stat. § 407.020.

To prevail on an MMPA claim, a plaintiff must demonstrate that he or she "(1)

purchased the goods (or services) from the defendant; (2) for personal, family or

household purposes; and (3) suffered an ascertainable loss of money or property (4) as a

result of an act declared unlawful under [§ 407.020]." *Tucker v. Gen. Motors LLC*, 58

F.4th 392, 397 (8th Cir. 2023) (quoting *Vitello v. Natrol, LLC*, 50 F.4th 689, 693 (8th Cir.

2022)).

In 2020, the Missouri legislature significantly amended the MMPA. The 2020

amendments to § 407.025.1(2) added three elements that "[a] person seeking to recover

damages shall establish": "(a) That the person acted as a reasonable consumer would in

11

light of all circumstances; (b) That the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages and; (c) Individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty." *Abbott v. Golden Grain Co.*, No. 4:22-CV-01240-SRC, 2023 WL 3975107, at *4 (E.D. Mo. June 13, 2023) (quoting Mo. Rev. Stat. § 407.025.1(2)).

**Causation**

Defendant asserts that the issue of causation requires an individualized, multi-step inquiry. Defendant contends that if a consumer knew the actual contents of the package, i.e. did not rely on the packaging (either through previous purchases, reading the net weight, picking up the bag, etc.), then they were not injured. In other words, in order to determine whether the allegedly deceptive packaging caused an injury, Defendant asserts that the Court must determine whether each individual purchaser actually relied on the packaging when making their purchase.

The 2020 Amendments added a specific causation requirement: plaintiff must establish that "the method, act, or practice declared unlawful by § 407.020 would cause a reasonable person to enter into the transaction that resulted in damages." Mo. Rev. Stat. § 407.025(1). Prior to the Amendments, plaintiffs were not required to demonstrate that the deceptive practice caused their purchase. *Plubell v. Merck & Co.*, 289 S.W.3d 707, 714 (Mo. Ct. App. 2009) (explaining that "the statute does not require that the purchase be caused by the unlawful practice" and "class members are not individually required to show what they would or would not have done had the product not been misrepresented

12

and the risks known.").  The new causation element undoubtedly requires a showing of reliance, but contrary to Defendant's assertion, this element does not require an *individual* showing of reliance.  Rather, it asks whether the deceptive packaging would cause a *reasonable person* to enter into a transaction.

Although this specific issue has not yet been addressed by the Eighth Circuit or Missouri Courts, other circuits have found that statutes with a "reasonable consumer standard" can be satisfied without any individualized proof of reliance.  *See In re McCormick*, 422 F. Supp. 3d 194, 244-45 ("[P]roof of deception . . . is judged by an objective, reasonable consumer standard and can be satisfied without any individualized proof of reliance."); *Clevenger v. Welch Foods Inc.*, 342 F.R.D. 446, 460 (C.D. Cal. 2022) (finding that "the reasonable consumer test is inherently an objective analysis, and thus issues of [whether the alleged act was unlawful] may be decided on a class-wide basis.").  Accordingly, the Court finds that the issue of whether a reasonable consumer would be deceived by the allegedly deceptive packaging is subject to common proof, thus can be determined on a class wide basis.  *See In re Smitty's/Cam2 303 Tractor Hydraulic Fluid Mktg.*, No. 4:20-MD-02936-SRB, 2023 WL 9064606, at *17 (W.D. Mo. Dec. 13, 2023), *appeal denied*, No. 23-8010 (8th Cir., Jan. 17, 2024) (finding that common issues of fact and law dominate the MMPA claim because "Missouri courts have held that the MMPA does not require individualized evidence as it pertains to reliance.")

In its supplemental briefing, Defendant argues that class certification is not appropriate because a reasonable consumer would not be deceived by the packaging because the package contains a clear window that accurately shows where in the package

the contents are located, and there is no false, misleading, or deceptive marker on the package which would lead a reasonable consumer into believing there are more contents in the package than what is represented by the Product.  But this is a merit-based argument not properly addressed at this stage.  *See Amgen,* 568 U.S. at 466 ("Merits questions may be considered only to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."); *Postawko*, 910 F.3d at 1037 ("[The Court's] primary task is not to determine the final disposition of a plaintiff's claims, but instead to examine whether those claims are appropriate for class resolution.").

Defendant has never presented this argument in a manner that would permit the Court to address its merits, such as on a motion to dismiss or motion for summary judgment, and cannot do so here.  The issue of causation in this context does not affect the Court's analysis under Rule 23.  Whether the packaging would deceive a reasonable consumer is a question common to the class.  The answer will likewise be common.  *See Fant v. City of Ferguson*, No. 4:15-cv-00253-AGF, 2022 WL 2072647, at *6 (E.D. Mo. June 9, 2022).

**Ascertainable Loss**

Defendant also argues that individual inquiries are required to determine whether each Plaintiff suffered a loss under the MMPA.[4]  Specifically, Defendant argues that a

---

[4]      In its supplemental briefing, Defendant also argues that Plaintiff cannot establish an ascertainable loss because the package was not deceptive, and she got "exactly what she bargained for."  Similar to above, this is an argument related solely to the merits.  It is not a proper defense to class certification, and the Court will not adjudicate this case on

plaintiff who knew how many yogurt-covered raisins were in the bag due to a previous purchase or did not care how many raisins were in the bag did not suffer an injury.  Here, because Plaintiff is asserting an economic loss, as opposed to a subjective loss, Defendant's argument fails.  Further, the alleged ascertainable loss can be determined on a class-wide basis.

Missouri courts apply the "benefit of the bargain" rule when determining whether a plaintiff has suffered an ascertainable loss under the MMPA.  *See Vitello v. Natrol, LLC*, 50 F.4th 689, 693 (8th Cir. 2022).  "The 'benefit of the bargain' rule awards a prevailing party the difference between the value of the product as represented and the actual value of the product as received."  *Id.* (quoting *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014)).

Plaintiff's MMPA claim is that Defendant's unlawful act (deceptively underfilling the vanilla yogurt raisin bags) caused an ascertainable loss because the value of the raisins received by all purchasers was less than the value of the raisins as represented by the container.  Given this theory of liability, ascertainable loss is subject to common proof.

To support its argument that individual inquiries are required to prove causation and loss under the MMPA Defendant relies on a *White v. Just Born, Inc.*, No. 2:17-CV-04025-NKL, 2018 WL 3748405 (W.D. Mo. Aug. 7, 2018), which held that individuals who did not care about an alleged MMPA violation, or who knew about the violation, but

_____

the merits without a proper motion from Defendants.

15

purchased the product anyways, have not been injured under the MMPA.  In *White*, the
court found that if an individual knew how much slack-fill was in a box of candy before
he purchased it (i.e. via a prior purchase), then he suffered no injury under the MMPA.
*Id.* at \*3-4.  On this basis, the court determined that "the litigation would be dominated
by individual inquiries into whether each class member was deceived by any slack-fill in
a box before purchasing it.  In other words, it would be dominated by causation and
knowledge."  *Id.* at 4 (denying certification of the class on the grounds that common
questions did not predominate).  *White*'s conclusion relied on the Missouri Supreme
Court decision in *State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855 (Mo. Banc.
2008).  *White* summarized the *Nixon* holding as follows:

> [T]he Missouri Supreme Court has held that a plaintiff who "did not care"
> about an alleged MMPA violation, or who "knew about" the violation and
> "purchased . . . [the] products anyway," was not injured by the practice.

*White*, 2018 WL 3748405, at \*3 (quoting *Nixon*, 249 S.W.3d at 862).

This interpretation overlooks a key distinction made in *Nixon*: whether the loss
was subjective or economic.  In *Nixon*, the plaintiff claimed that "she and many other
consumers would not have purchased fountain Diet Coke if they had known it contained
saccharin" and that "the deception, itself, resulted in irreparable harm."  *Nixon*, 249 S.W.
3d at 859.  The Missouri Supreme Court found that the proposed class was impermissibly
overbroad because it "undoubtedly includes an extremely large number of uninjured class
members, that is, those who did not care if the Diet Coke they purchased contained
saccharin."  *Id.* at 862.  The Court found that, based on Plaintiff's own expert, eighty
percent of the putative class did not care whether their Diet Coke contained saccharin,

and on such basis, suffered no injury. *Id.* However, *Nixon* did not hold that in every

MMPA case there would be no injury if plaintiff "did not care" about the alleged MMPA

violation. On the contrary, it specifically emphasized that the alleged injury at issue was

subjective (a preference against saccharin), and the outcome would be different when the

alleged injury was economic/objective. *See id.* at 863. In making this distinction, *Nixon*

distinguished its holding from *Craft v. Phillip Morris Co.*, 190 S.W.3d 368 (Mo. Ct. App.

2005), a Missouri Court of Appeals Case based on an alleged economic injury:

> [T]he plaintiffs in *Craft* "alleged that they were aggrieved and suffered
> ascertainable losses because they failed to receive the qualities and economic
> value of a low tar, low nicotine cigarette. *Id.* [at 375]. That is, all consumers
> suffered an economic injury that was based on an objective characteristic.
> Here, however, all purchases of fountain *Diet Coke* received fountain *Diet
> Coke*. The alleged injury was based on a subjective preference against
> saccharin.

*Nixon*, 249 S.W.3d at 863 (citing *Craft*, 190 S.W.3d at 375).

In interpreting the MMPA, many Courts have found this distinction crucial when

determining commonality and predominance for class certification purposes. In *In re

McCormick & Co., Inc. Pepper Products Marketing & Sales Practices Litigation*, 422 F.

Supp. 3d 194 (D.D.C. 2019), the plaintiffs were seeking to certify a class under the

MMPA for black pepper containers that allegedly contained excessive slack-fill. The

court explained that the plaintiffs' theory of liability was that "defendants' unlawful act

(deceptively underfilling the Slack-Filled Pepper Products) caused an ascertainable loss

because the value of the pepper received by all purchasers was less than the value of the

pepper as represented by the container size" and given this theory of liability under the

MMPA "both causation and ascertainable loss are common questions for purposes of

17

Rule 23(b)(3)." *Id.* at 263.  The court specifically addressed the *White* holding, and also found that its interpretation of *Nixon* was misplaced given the distinction between subjective loss and economic loss.  *Id.* at 263-64.  The court then further explained that the plaintiff's alleged injury was economic,[5] thus "subject to common proof . . . and 'common questions' for purposes of analyzing predominance."  *Id.* at 264.

In *Burnett v. Nat'l Ass'n of Realtors*, No. 19-CV-00332-SRB, 2022 WL 1203100 (W.D. Mo. Apr. 22, 2022), the court found that whether plaintiffs were aware of the defendants' alleged unlawful act under the MMPA was irrelevant for the purposes of determining predominance under Rule 23(b)(3) because plaintiffs alleged an objective economic loss—overcharging broker commissions that plaintiffs had no power to negotiate.  *Id.* at *18 (distinguishing *Nixon*, 249 S.W.3d 885 on the basis of whether the loss was subjective or economic).  *Burnett* concluded that the plaintiff's theory of liability under the MMPA, because it was based on an objective economic loss, did not rely on what the class members knew or preferred.  *Id.* at *19.  The court found that the common issue of whether an injury occurred predominated for purposes of class certification.  *Id.* at *18-19; *see also Hope v. Nissan, N. Am. Inc.*, 353 S.W.3d 68, 80 (Mo. Ct. App. 2011) (affirming class certification of MMPA claims and observing that a case like *Nixon* where the basis of injury was subjective consumer preference is on different footing from a case where the alleged injury is the diminished economic value of the product received

---

[5]     "The alleged injury is the difference in value of the pepper as represented and the value of the pepper as received.  Thus, they have alleged an economic injury based on an objective characteristic, not an injury that is dependent on class members' subjective preferences."  *Id.* at 264.

by every purchaser, such as a car with a latent dashboard bubbling effect); *Plubell*, 289 S.W.3d at 71) (finding that the plaintiff's theory that medication with undisclosed safety risks was worth less than it cost was subject to common proof under the MMPA).

Here, the alleged injury is the difference in value of the raisins as represented and the value of the raisins as received.  Thus, Plaintiff has alleged an economic injury based on an objective characteristic, not an injury that is dependent on class members' subjective preferences.  Accordingly, the Court finds that the issues of causation and ascertainable loss under the MMPA are subject to common proof and are common questions that predominate for the proposed class.

Standing

On the same basis, Defendant asserts that any individual who has repeatedly purchased and/or has seen the Product prior to purchasing it and has chosen to purchase it anyway, has no injury pursuant to *Nixon*, 249 S.W.3d 885 and *White,* and thus has no standing.  Defendant argues that because the putative class contains members who lack standing, the class cannot be certified.  *See In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011).

However, as discussed in detail above, under Plaintiff's theory of liability under the MMPA, the injury is that Defendant's unlawful act (deceptively underfilling the vanilla yogurt raisin bags) caused an ascertainable loss because the value of the raisins received by all purchasers was less than the value of the raisins as represented by the container.  The alleged injury here is an objective, economic, "benefit-of-the-bargain" loss, which is sufficient to convey Article III standing.  *See George v. Omega Flex, Inc.,*

19

874 F.3d 1031, 1032 (8th Cir. 2017) (finding that "assertions of paying more than [the product] is worth and the consequent loss in value . . . are economic injury sufficient to establish Article III standing"); *Hays v. Nissan N. Am., Inc.*, No. 4:17-CV-00353-BCW, 2021 WL 912262, at *6 (W.D. Mo. Mar. 8, 2021) (finding that class members share a common "benefit of the bargain" injury under the MMPA to satisfy Article III standing, thus there was "no standing deficiency that precludes class certification."). Here, the putative class members share a common "benefit of the bargain injury" sufficient to establish standing under Article III.[6]

### Plaintiff as a Reasonable Consumer

The 2020 Amendments require that the plaintiff establish that he or she "acted as a reasonable consumer would in light of all circumstances." Mo. Rev. Stat. § 407.025.1(2)(a). Defendant argues that Plaintiff has not adequately alleged, nor can she establish that she acted as a reasonable consumer. Such arguments are not proper on this motion. Indeed, Defendant has not contested Plaintiff's adequacy as a class representative. However, the issue of whether this element is capable of common proof is a closer call. To the extent this issue requires some individualized inquiry among the class members, the Court finds that this issue does not predominate. *See Johannessohn*, 9 F.4th at 984–85; *see also Hays*, 2021 WL 912262, at *7 (holding, in an MMPA class action claim, "[t]o the extent class members must demonstrate the purpose of their

---

[6]     Defendant may perhaps assert that a consumer cannot meet the causation requirement with respect to a second purchase of the same product. But this, too, is subject to class-wide determination and would not in any event, impact standing with respect to their first purchase.

purchase, the Court finds this is not an individual issue that overtakes the common issues, and thus does not preclude class certification.").

As discussed above, the common, predominate issues in this case are: (1) whether Defendant committed an unlawful act under the MMPA; (2) whether the unlawful act would cause a reasonable consumer to purchase the product; and (3) whether Plaintiffs suffered an ascertainable loss due to Defendant's packaging. These issues do not require individual inquiry and are subject to class-wide proof.

Additionally, the Court finds that pursuant to Fed. R. Civ. P. 23(b)(3), a class action is superior to other available methods for fairly and efficiently adjudicating this controversy. The claims at issue only involve Missouri plaintiffs, each with relatively small claims, who might not otherwise seek or obtain relief absent a class action. *See Glen v. Fairway Indep. Mortg. Corp.*, 265 F.R.D. 474, 482 (2010) (finding that a class action was a superior method for an MMPA claim because the controversies "involve only Missouri plaintiffs, each with relatively small claims, who might not otherwise seek or obtain relief absent a class action" and "because the Court only need apply the law of Missouri."). In *Burnett*, the court found that a class action was the superior method in the MMPA case because: (1) "each member has little incentive to control the litigation because the identical claims would result in uniform damages calculation," (2) "each class members' damages will be small compared with the relatively high cost of bringing litigation" and (3) "separate proceedings would produce duplicative efforts and risk inconsistent verdicts." 2022 WL 1203100, at *19. For these same reasons, the Court

finds that a class action is the superior method for adjudication of these claims.[7]

## Class Period

Plaintiff seeks to certify a class between November 14, 2017 through present.  The Amendments were enacted on August 28, 2020.  The Court asked the parties to address in their supplemental briefing whether the class period would be impacted by the Amendments, but neither party addressed this issue.  Pursuant to Mo. Rev. Stat. § 510.262, the 2020 MMPA Amendments "shall apply to causes of action filed on or after August 28, 2020."  Given this cause of action was filed on November 14, 2022, it appears that the Amendments will apply to all the class members' claims.   Regardless, the Court finds that class certification is proper both prior to and after the 2020 Amendments.  Whether division into sub-classes for claims arising prior to the 2020 Amendments is appropriate can be discussed at a later date.

## Adequacy of Class Counsel

Plaintiff is seeking the appointment of the Daniel F. Harvath, Harvath Law Group, LLC and Spencer Sheehan, Sheehan & Associates, P.C., as Class Counsel.  Defendant has opposed the appointment of Spencer Sheehan on the grounds that he is not adequate to represent the proposed class due to recent and numerous potential sanctions and admonishments for filing dozens of frivolous cases similar to this case.  Plaintiff did not

---

[7]     Indeed, Courts have repeatedly certified classes under the MMPA since the addition of the 2020 Amendments, finding that issues of causation and loss predominate. *See In re Smitty's*, 2023 WL 9064606, at *17; *Burnett*, 2022 WL 1203100, at *18; *Hays*, 2021 WL 912262, at *6-7; *Tershakovec v. Ford Motor Co.*, 79 F.4th 1299, 1312-1316 (11th Cir. 2023).

respond to Defendant's arguments regarding Mr. Sheehan, but stated "[t]o the extent the Court merits Defendant's argument, the Court should allow this action to proceed with only Daniel Harvath as Plaintiff's Class Counsel."

When appointing class counsel, the court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class" and may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Fed. R. Civ. P. 23(g)(1)(A)-(B).

Mr. Harvath has adequately identified and investigated the potential claims in this action, has considerable experience in class actions and complex litigation (*see* Doc. No. 27-1), and has committed resources to this matter, including the retention of an expert witness.  In light of these considerations, and given that Defendant does not object to the appointment of Mr. Harvath as class counsel, the Court finds that Mr. Harvath will fairly and adequately represent the interests of the class.  Accordingly, the Court will appoint Daniel Harvath as class counsel.

The Court will not, however, appoint Mr. Sheehan as class counsel.  Plaintiff made no effort to respond to the arguments of Defendant with respect to Mr. Sheehan's adequacy as class counsel.  And though this case has been pending for more than one year, Mr. Sheehan has never entered an appearance in this case, nor does it appear that he is admitted to practice in this Court.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for class certification is

**GRANTED**.  The Court will grant class certification for claims under the MMPA (Count

One).  Doc. No. 26.

**IT IS FURTHER ORDERED** that named Plaintiff Kimberly Diesel is appointed

as Class Representatives to represent the <u>MMPA Class</u>, defined as follows:

> All persons who purchased the Vanilla Yogurt Raisins in seven-ounce
> packages sold by Mariani Packing Company, Inc. ("Defendant") in Missouri
> between November 14, 2017, through present, excluding the judge or
> magistrate assigned to this case; Defendant; any entity in which Defendant
> has a controlling interest; Defendant's officers, directors, legal
> representatives, successors, and assigns; and person who purchased the
> Product for the purpose of resale.  (MMPA – Count One).

**IT IS FURTHER ORDERED** that Daniel F. Harvath of Harvath Law Group,

LLC, 75 W Lockwood Ave Ste 1, Webster Groves, Missouri 63119 is appointed as Class

Counsel.

**IT IS FURTHER ORDERED** that the parties shall meet and confer and within

**14 days** of this order submit a joint proposed order regarding notice in accordance with

Fed. R. Civ. P. 23(c)(2)(B).

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 18th day of April, 2024.