UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KIMBERLY DIESEL,
individually, and on behalf of
all others similarly situated,                    )
                                                  )
            Plaintiff,                            )
                                                  )
    v.                                            )        Case No. 4:22-cv-01368-AGF
                                                  )
MARIANI PACKING COMPANY,                          )
INC.,                                             )
                                                  )
            Defendant.                            )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Mariani Packing Company, Inc.'s ("Mariani") motion (ECF No. 49) for summary judgment with respect to the only remaining claim in this case: Plaintiff's claim alleging that Defendant committed violations of the Missouri Merchandising Practices Act ("MMPA"). This matter is fully briefed and ready for disposition. For the reasons discussed below, the Court will grant Defendant's motion for summary judgment.

## BACKGROUND

For the purposes of the motion before this Court, the record establishes the following facts. In early October of 2022, Plaintiff purchased Defendant's seven-ounce bag of Vanilla Yogurt Raisins ("Product") at a Dierbergs grocery store in St. Louis, Missouri, after having previously purchased this Product on two or three other occasions. ECF No. 50-7, Def.'s Ex. 7, Diesel Dep. at 27:15-28:7. The Product is produced by Defendant, a California Corporation, and is sold to consumers online and in grocery

stores, big box stores, and convenience stores throughout the country, including in the state of Missouri.  Plaintiff did not object to the amount of yogurt covered raisins in the prior bags she purchased.  *Id*. at 59:10-19; 60:5-8.

After purchasing the Product for the third or fourth time, Plaintiff noticed that despite the Product's packaging being 19.5 centimeters high, the bag was filled to only eight (8) centimeters with vanilla yogurt raisins.  In other words, the Product contains 58% slack-fill.[1]

In her deposition taken in this case, Plaintiff acknowledged that the Product accurately listed its net weight ("7 ounces, 198 grams") directly on the front of the packaging but stated that she assumed that the Product was full because she could see the yogurt covered raisins filled up to the height of a window on the front of the Product's packaging.  ECF No. 50-7, Def.'s Ex. 7, Diesel Dep. at 35:24-36:5; 37:15-19.  Plaintiff also admitted that she never read the information printed on the Product's packaging other than the name of the Product, nor did ever she feel the contents of the packaging,

---

[1]     Plaintiff appears to derive the Product's slack-fill percentage roughly by dividing the height of the raisins in the packaging by the total height of the packaging.  (19.5 x 42% = 8.19).  However, it is unclear that this figure accurately reflects the percentage of slack-fill in the Product.  The material of the packaging appears to be malleable and to taper from the top to a wider bottom of packaging when filled.  *See* ECF No. 1-1, Pl.'s Ex. 1, Compl. at ¶ 1.  The yogurt covered raisins also do not appear to be uniform in size and shape.  *Id*.  Therefore, it is unclear that each additional centimeter in height of the packaging would be filled with the same volume of yogurt covered raisins.  Plaintiff does not offer any more accurate means of determining the amount of slack-fill at issue and Plaintiff's expert acknowledged that he was not provided any measure of the volume of the packaging.  ECF No. 50-8, Def.'s Ex. 8, Ingersoll Dep. at 30:16-31:16.  Nevertheless, Defendant has not challenged Plaintiff's asserted percentage of slack-fill.

despite acknowledging feeling other products she purchased from the grocery store. *Id*. at 38:25-39:19.

Instead, Plaintiff's stated basis for believing the Product should contain more contents was based entirely on her own personal opinion of the appearance of the package. *Id*. at 46:9-47:15. Nevertheless, Plaintiff confirmed that she would have still purchased the Product, containing the exact same amount of yogurt covered raisins, if the packaging had contained a "fill line" indicating the height of the raisins in the bag she bought. *Id*. at 100:1-19.

On November 14, 2022, Plaintiff filed this class action against Defendant in the Circuit Court of St. Louis County claiming that Defendant's Product misled reasonable consumers, including Plaintiff, and asserting violations of the MMPA, State Consumer Fraud Acts, breaches of express warranty, implied warranty of merchantability/fitness for a particular purpose, and the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; negligent misrepresentation; fraud; and unjust enrichment. *See* ECF No. 1-1, Pl.'s Ex. 1, Compl. Defendant removed this class action to this Court on December 12, 2022 (ECF No. 1) and Plaintiff subsequently withdrew all of her claims except the MMPA claim. ECF Nos. 27, Pl.'s Mem. Supp. Class Certification. at 6 and 35, Pl.'s Suppl. Br. at 7. On April 18, 2024, this Court granted Plaintiff's motion for class certification on the MMPA claim. ECF No. 37, Mem. and Order Grant. Class Certification. Defendant now seeks summary judgment for failure to establish a viable claim under the MMPA. ECF No. 49, Def.'s Mot. Summ. J.

3

## ARGUMENTS OF THE PARTIES

Defendant argues that summary judgment is warranted because Plaintiff has not established her claim against it under the MMPA.  Specifically, Defendant argues that: (1) Plaintiff has not established an ascertainable loss of money or property; (2) Plaintiff has not established Defendant acted unlawfully under the MMPA; (3) Plaintiff failed to show that she acted reasonably or that Defendant's practices would cause a reasonable person to enter into the transaction that resulted in damages; (4) Plaintiff failed to establish individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty; and (5) Plaintiff has failed to offer any evidence to establish the Product does not fall within 21 C.F.R. § 100.100(a)(1) or (2)'s nonfunctional slack-fill exception.[2]

In response, Plaintiff argues that genuine disputes of material fact preclude the entry of summary judgment and that she has met all of the requirements of the MMPA. Specifically, Plaintiff argues that: (1) her actions were consistent with a "reasonable consumer"; (2) her testimony shows that the Product's packaging misled her; (3) there is

---

[2]        Under 21 C.F.R. § 100.100(a), a container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill.  21 C.F.R. § 100.100(a).  Slack-fill is non-functional if it cannot be justified by any of the following reasons: (1) protection of the contents of the package; (2) the requirements of the machines used to enclose the contents in such a package; (3) unavoidable product settling during shipping and handling; (4) the need for the package to perform a specific function; (5) the container is reusable, part of the presentation of food, and has value that is significant and independent of its function to hold food; or (6) the inability to increase the level of fill or reduce the package size because, for example, the size is necessary to meet food labeling requirements or discourage theft.  *See id*. § 100.100(a)(1)-(6).

sufficient basis for establishing ascertainable loss; (4) she complied with the 2020

Amendments to the MMPA; and (5) Defendant's design for the Product's packaging

caused it to be a "misleading container" and therefore the recognized safe-harbor

exemptions are irrelevant to determining whether Defendant's packaging was deceptive.

In reply, Defendant argues that: (1) Plaintiff's actions were not consistent with

those of a reasonable consumer; (2) Plaintiff was not reasonably misled into purchasing

the Product; (3) a reasonable consumer would have a fair idea of the Product's weight;

(4) Plaintiff could not have been reasonably misled by the packaging as she had

purchased the Product in the past; (5) Plaintiff cannot establish an ascertainable loss of

money or property; and (6) Plaintiff has failed to provide any evidence that Defendant is

not entitled to one of the "safe harbor" provisions of 21 C.F.R. § 100.100.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be

granted "if the movant shows that there is no genuine issue as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he burden

of demonstrating that there are no genuine issues of material fact rests on the moving

party," and the court must view "the evidence and the inferences which reasonably may

be drawn from the evidence in the light most favorable to the nonmoving party." *Allard*

*v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015).

In opposing summary judgment, a plaintiff may not "simply point to allegations"

in the complaint, *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004),

or "rest on the hope of discrediting the movant's evidence at trial," *In re Citizens Loan*

*and Sav. Co.*, 621 F.2d 911, 913 (8th Cir. 1980).  Rather, the plaintiff "must identify and provide evidence of specific facts creating a triable controversy."  *Howard*, 363 F.3d at 800 (citation omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

The movant is entitled to summary judgment when the non-movant has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate."  *Eichenwald v. Small*, 321 F.3d 733, 736 (8th Cir. 2003).

## DISCUSSION

The MMPA gives consumers a private right of action to recover damages from product sellers:

> Any person who purchases or leases merchandise primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person or a method, act or practice declared unlawful by section 407.020, may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages.

Mo. Rev. Stat. § 407.025.1(1).

Section 407.020 prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the

6

concealment, suppression, or omission of any material facts in connection with the sale or advertisement of any merchandise in trade. . . ."  For Plaintiff to state a claim under the MMPA, she must show that she "(1) purchased merchandise from [Defendant]; (2) for personal, family or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under [§ 407.020]." *Tucker v. General Motors LLC*, 58 F.4th 392, 397 (8th Cir. 2023) (quoting *Vitello v. Natrol, LLC*, 50 F.4th 689, 693 (8th Cir. 2022)).

In 2020, the Missouri legislature significantly amended the MMPA.  The 2020 amendments to § 407.025.1(2) added three elements that "[a] person seeking to recover damages shall establish": "(1) That the person acted as a reasonable consumer would in light of all circumstances; (2) That the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages; and (3) Individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty."  Mo. Rev. Stat § 407.025.1(2).

The Eighth Circuit has not yet addressed the significance of the three requirements added by the 2020 Amendments.  However, several cases in the Eastern and Western Districts of Missouri have recently applied the amendments in similar cases and found them to have added three elements to the original four set by the pre-amendment MMPA. *See, e.g., Nation v. Moore*, No. 3:22-cv-05063-MDH, 2024 WL 3360659, at *4 (W.D. Mo. July 10, 2024); *Guerrero v. PIM Brands, Inc.*, No. 4:23-cv-690-RLW, 2024 WL 3338843, at *2 (E.D. Mo. July 9, 2024); *Guerrero v. Henkel Corp. et al.*, No. 4:24-cv-

7

00057-SRC, 2024 WL 2769745, at *3-4 (E.D. Mo. May 30, 2024); *Ellis v. Nike USA, Inc.*, No. 4:23-cv-00632-MTS, 2024 WL 1344805, at *3 (E.D. Mo. Mar. 28, 2024); *Abbott v. Golden Grain Co.*, 677 F. Supp. 3d 940, 946 (E.D. Mo. 2023); *Bell v. Annie's, Inc.*, 673 F. Supp. 3d 993, 998 (E.D. Mo. 2023).  The 2020 amendments also empower courts to dismiss as a matter of law cases "where the claim fails to show a likelihood that the method, act, or practice alleged to be unlawful would mislead a reasonable consumer."  Mo. Rev. Stat. § 407.025.1(2).

Viewing the record in the light most favorable to Plaintiff, Plaintiff cannot demonstrate that she suffered an ascertainable loss of money or property as a result of Defendant's alleged misconduct or that Defendant committed an act declared unlawful under the MMPA.  Plaintiff also cannot demonstrate that she has satisfied the post-amendment elements of the MMPA.[3]

**<u>Ascertainable Loss</u>**

Missouri courts apply the "benefit of the bargain" rule when determining whether a plaintiff has suffered an ascertainable loss under the MMPA.  *See Goldsmith v. Lee Enters., Inc.*, 57 4th 608, 615 (8th Cir. 2023) (citing *Vitello v. Natrol, LLC*, 50 F.4th at 693).  The "benefit of the bargain" rule awards a prevailing party "the difference between the value of the product as represented and the actual value of the product as received."

---

[3]    Even under the pre-amendment case law addressing the MMPA, Plaintiff still fails to establish the existence of an element essential to her MMPA claim and cannot meet the standard to survive summary judgment. *See Bratton v. Hershey Company*, No. 2:16-cv-4322-C-NKL, 2018 WL 934899, at *3 (W.D. Mo. Feb. 16, 2018) (finding a repeat purchaser of a product could not establish ascertainable loss as a matter of law because his knowledge of the purported slack-fill in the product was fatal to his MMPA claim).

*Goldsmith*, 57 F.4th at 615 (quoting *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014)).  Under this long-standing rule "the proper measure of damages … is the difference between the actual value of the property at the time of the sale and what its value would have been if the representation has been true…." *Kendrick v. Ryus*, 123 S.W. 937, 939 (1909) (citation omitted).

To demonstrate ascertainable loss, Plaintiff must show that Defendant represented the Product in a way that made it appear to have more value than it actually did.  This requires Plaintiff to show some discrepancy between Defendant's representation and the actual product.  *Abbott*, 677 F. Supp. 3d at 948.

Plaintiff has alleged an economic injury based on an objective characteristic – the difference in the value of the Product as represented and the Product as received.[4] However, Plaintiff has produced no evidence to support a claim of economic injury. Plaintiff argues instead that she believes that she received fewer yogurt covered raisins than advertised based solely on the appearance of the Product.  Plaintiff insists that she did not notice the weight of the Product, feel the contents of the Product, or read any of the information printed on the Product prior to purchasing it.  ECF No. 50-7, Def.'s Ex. 7,

---

[4]     Plaintiff asserted in her Complaint that Defendant's alleged unlawful act (deceptively underfilling the Product) caused an ascertainable loss because the value of the raisins received by all purchasers was less than the value of the raisins as represented by the container.  ECF No. 1-1, Pl.'s Ex. 1, Compl. at ¶ 32.  In her briefing in support of her motion for class certification, Plaintiff asserted that the "measure of each class member's damages is the amount of price premium inherent in a bag of vanilla yogurt raisins that class members purchased that corresponds to a supposed package fill level of 50% or greater, as represented by Defendant's package design."  ECF No. 27, Pl.'s Mem. Supp. Class Certification. at 11.

Diesel Dep. at 39:3-19.

In justifying her purchasing decision, Plaintiff relies on *Hawkins v. Nestle*, a pre-amendment decision, to support her general argument that "product purchasing decisions are heavily dependent on the packaging, and on the package dimensions in particular, and that consumers tend to choose a larger package over a smaller one, thinking it is a better value." 309 F. Supp. 3d 696, 706 (E.D. Mo. 2018). However, *Hawkins* addressed the sufficiency of pleadings on ascertainable loss at the motion to dismiss stage, and not at the summary judgment stage.

Furthermore, the 2020 amendments to the MMPA undermine the reasoning from the pre-amendment cases supporting this position even at the motion to dismiss stage. "The Court cannot simply rely on a plaintiff's statement that [she] subjectively made conclusions about a package's contents that the package's express disclosures contradict because § 407.025.01(2) requires that the plaintiff act as a reasonable consumer. Under the benefit-of-the-bargain rule, courts compare the actual product with the product as represented by the seller, not the product as conjured or hoped for by the consumer." *Abbott*, 677 F. Supp. 3d at 949 (citing *Kendrick*, 123 S.W. at 939). Plaintiff must also establish damages with sufficiently definitive and objective evidence to allow loss to be calculated to a reasonable degree of certainty. She does neither here.

Plaintiff cannot establish a difference in value under the benefit-of-the-bargain rule because all of the representations as to the quantity on the bag of raisins were correct and there was no discrepancy between the representation and the product actually received. Therefore, Plaintiff received what she bargained for. *See Abbott*, 677 F. Supp.

10

3d at 950.  Plaintiff acknowledged that Defendant's Product contained seven ounces of yogurt covered raisins as printed on the Product.  ECF No. 50-7, Def.'s Ex. 7, Diesel Dep. at 35:24-36:6.  Plaintiff admitted that none of the words on the packaging were misleading and that if the bag had contained a "fill line" indicating the height that the yogurt covered raisins reached in the existing packaging, she still would have purchased the Product for the same price.  *Id*. at 100:1-19.

Because Plaintiff does not allege that she received less than the disclosed amounts, she received what she bargained for and cannot demonstrate ascertainable loss.  *Guerrero*, 2024 WL 3338843, at *3 (finding claims of ascertainable loss insufficient even at the motion to dismiss stage where the plaintiff did not allege that he received less than the disclosed amounts on the packaging).

In her opposition brief, Plaintiff generally references the opinion of her expert witness with respect to loss, but his opinions on ascertainable loss are plainly insufficient and would not survive analysis under Fed. R. Evid. 702.  The expert suggested two models by which he may be able to calculate a possible price premium for the Product but was never asked to produce the model nor provided with the information necessary to do so.  ECF No. 50-8, Def.'s Ex. 8, Ingersoll Dep. at 83:1-84:14.  More specifically, Plaintiff's expert proposed, but never conducted, two methods for calculating a possible price premium: (1) a conjoint analysis for identifying the unique impact of one product factor, such as size, price, color, or other attribute of a product on willingness to purchase an item; and (2) a hedonic pricing model, which is used by economists to estimate the value of different characteristics of a good.  ECF No. 27-2, Pl.'s Ex. 2, Ingersoll Decl. at

54-60.  The expert stated that in order to conduct this analysis to try and calculate a price premium, he would require further market research and relevant data consisting of different products and their characteristics, collected either through retail product price surveys, review of online vendors, and perhaps from wholesalers or the producers directly.  *Id*. at 56, 60.

In his deposition, Plaintiff's expert testified that he never conducted either a conjoint analysis or built a hedonic pricing model.  ECF No. 50-8, Def.'s Ex. 8, Ingersoll Dep. at 83:1-9.  He acknowledges that without additional surveys and data that he cannot say whether anyone suffered a loss of money of any kind as a result of buying the Product.  *Id*. at 85:16-24.  Nor could Plaintiff offer any opinion on what the difference in value would be between the Product as represented and as received.  ECF No. 53, Pl.'s Mem. Opp'n. Summ. J. at 9 (arguing in her opposition brief that her lay testimony relating to receiving her "money's worth" would not be admissible under Fed. R. Evid. 701).  Plaintiff therefore has not provided any evidence to establish an ascertainable loss.

Plaintiff's argument is also undermined in light of her status as a repeat purchaser ECF No. 50-7, Def.'s Ex. 7, Diesel Dep. at 27:15-28:7.  The "plain language of the MMPA requires a causal connection between the ascertainable loss and the [alleged] unfair or deceptive merchandizing practice."  *Guerrero*, 2024 WL 3338843, at \*4 (citing *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 922 (8th Cir. 2008)).  Missouri courts have dismissed claims entirely for failure to allege an ascertainable loss caused by the defendant's conduct when a plaintiff is a repeat purchaser.  *See Guerrero*, 2024 WL 3338843, at \*3-4; *Bratton*, 2018 WL 934899, at \*3.

12

**Unlawful Act**

Plaintiff also must demonstrate that Defendant committed "an act declared unlawful under the [MMPA]," *Tucker*, 58 F.4th at 397 (alteration in original) (citation omitted), such as deception, fraud, or misrepresentation. Mo. Rev. Stat. § 407.020.1. The MMPA does not define "unfair" or "deceptive practices" and the amendments did not add any definitions. *Henkel Corp.*, 2024 WL 2769745, at *4 (citing *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 724 (Mo. 2009)). Instead, the MMPA continues to "leave [ ] to the court in each particular instances the determination whether fair dealing has been violated." *Id.*

Plaintiff argues in her Complaint that Defendant misled purchasers into believing that they purchased substantially more vanilla yogurt covered raisins based upon the size of the Product's packaging *See* ECF No. 1-1, Pl.'s Ex. 1, Compl. at ¶¶ 6-10. Specifically, Plaintiff alleges that while federal and state regulations recognize valid safe harbor exemptions for functional excess space, the slack-fill in Defendant's Product is non-functional because it does not fall under any of the exemptions in 21 C.F.R 100.100(a)(1)-(6). *Id.* at ¶¶ 11-26. While Plaintiff briefly mentions the transparent window on the packaging (*Id.* at ¶ 27), Plaintiff specifically asserts that she relied on the size of the bag for her expectation that it contained more raisins than it did. *Id.* at ¶ 61.

Plaintiff's claim of deception is unpersuasive. Defendant's packaging prominently disclosed the net weight of the Product on the front label. *See e.g., Henkel Corp.*, 2024 WL 2769745, at *6 (stating that both Missouri law and the MMPA itself recognize that reasonable consumers read product labels and packaging); *Abbott*, 677 F. Supp. 3d at 950

(finding even at the motion to dismiss stage a reasonable consumer would assess the quantity promised by a package by reading the package); *Bell*, 673 F. Supp. 3d at 998-99 (finding that "reasonable consumers do review product labels" and "Missouri law recognizes that reasonable consumers do review product labels.") (internal citations omitted). Plaintiff also admits that none of the words on the packaging were misleading ECF No. 50-7, Def.'s Ex. 7, Diesel Dep. at 86: 13-24. Further, the packaging at issue here consists of a flexible bag, and Plaintiff could have readily felt the contents of the package, as she admits she does with other products, to determine how full the Product was. ECF 50-7 at 39: 3-19; *Buso v. Vigo Importing Co.*, No. 18-cv-01328-WQH-BGS, 2018 WL 6191390, at *5-6 (S.D. Cal. Nov. 28, 2018).

Furthermore, Plaintiff does not cite, nor has this Court been able to locate, any case from the Missouri Court of Appeals or Supreme Court of Missouri, before or after the 2020 MMPA amendment, holding that inclusion of alleged non-functional slack-filled space is an unlawful act, or otherwise violates the MMPA, when the product label accurately describes its contents. *See also Bell*, 673 F. Supp. 3d at 998, n. 4 (conducting a similar search and failing to locate any opinion holding the same).

Plaintiff also cites to a survey conducted by her expert suggesting that 73 of 110 persons surveyed (or 66.4%) believed the Product would be more than 50% full of yogurt covered raisins. ECF No. 27-2, Pl.'s Ex. 2, Ingersoll Decl. at 8. But the study was conducted online, with participants simply asked to look at a picture of the front label. *Id*. at 15 and 34. There was no opportunity for the participants to look at a three-dimensional real-life version of the packaging, much less to hold or inspect the packaging

as one might do when shopping.  Thus, Plaintiff has failed to establish an unlawful act due to the size of the packaging.

In her response to the motion for summary judgment Plaintiff now appears primarily to contend that because the Product's visible "window" on the front of the packaging appeared to be filled with raisins, it necessarily deceived intended purchasers into believing that the Product's packaging was more than half full, when instead it was only 42% full.

Plaintiff does not cite to any caselaw in this Circuit, or in any Circuit, to support her new argument that the packaging was made or formed in a misleading way using the "window," but instead relies heavily on FDA guidance describing misleading packaging under 21 C.F.R. Part 100.  ECF No. 53, Pl.'s Mem. Opp'n. Summ. J. at 13-14.  However, virtually all case law asserting a misleading container under 21 C.F.R. Part 100 that analyzes packaging made, formed, or filled to be misleading addresses slack-fill.  *See e.g., Guerrero*, 2024 WL 3338843, at *2-4 (addressing slack-fill in an allegedly misleading box of candy); *Abbott*, 673 F. Supp. 3d at 951 (addressing slack-fill in an allegedly misleading box of rice pilaf and noting that references to FDA regulations do not address what a state legislature deems misleading and necessary to state a cause of action under a state consumer-protection law); *Green v. SweetWorks Confections, LLC*, No. 18-cv-00902-LTS-SN, 2019 WL 3958442, at *6 (S.D.N.Y. Aug. 21, 2019) (addressing slack-fill in an allegedly misleading box of candy, rejecting plaintiff's new argument that differed from that set forth in her first amended complaint, and finding that she failed to allege any facts from which the Court could determine that the slack-fill was

non-functional); *Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 742-43 (N.D. Ill. Mar. 2019) (addressing slack-fill in an allegedly misleading box of candy and rejecting plaintiff's claims finding that the fact that plaintiff expected to receive something more than what she got, in and of itself, did not constitute actual damages); *Buso*, 2018 WL 6191390, at *5-6 (addressing slack-fill in an allegedly misleading package of risotto and noting that the pliability of the packaging would allow a reasonable consumer to feel the amount of product in the package when picking it up off of the shelf); *Daniel v. Tootsie Roll Indus., LLC*, 17 Civ. 7541 (NRB), 2018 WL 3650015, at *10 (S.D.N.Y. Aug. 1, 2018) (addressing slack-fill in an allegedly misleading box of candy and emphasizing that FDA regulations recognize the need for functional slack-fill); *Bush v. Mondelez Int'l, Inc.*, No. 16-cv-02460-RS, 2016 WL 7324990, at *3 (N.D. Cal. Dec. 16, 2016) (addressing slack-fill in an allegedly misleading container of cookies and rejecting defendants reliance on FDA regulations and guidance in a claim brought under state consumer protection laws because "[c]ourts, not the FDA" determine whether a product is misleading under those laws").

The one case the Court has found concerning a transparent window alleged to make packaging misleading was rejected by that court. *Stewart v. Riviana Foods Inc.*, No. 16-CV-6157 (NSR), 2017 WL 4045952 (S.D.N.Y. Sep. 11, 2017). In *Stewart*, the court rejected plaintiff's argument that a box of pasta with a transparent window was misleading because it resembled a similar pasta product sold by the defendant but with a greater net weight. *Id*. at 10. The court noted that analyzing potentially deceptive business practices was a context-specific task and that a reasonable consumer would not

16

have been misled by the transparent window on the packaging because the package also stated its net weight and ingredients which differed from defendant's other similarly packaged pasta products. *Id*. at 9-10. Furthermore, the court specifically noted that it was not addressing slack-fill under 21 C.F.R. § 100 because the plaintiff expressly told the court that she would not plead "slack-fill" claims in her complaint. *Id*. at 5, n. 11. Here, Plaintiff has specifically alleged in her complaint that Defendant's Product contained non-functional slack-fill.

**<u>Safe-Harbor Provisions</u>**

Moreover, Defendant has established by affidavit that any slack-fill in the Product served functional purposes expressly permitted by the exemptions under 21 C.F.R. § 100.100(a). Specifically, Defendant asserts that the slack-fill in the packaging is functional under 21 C.F.R. § 100.100(a)(1) and (2) because the slack-fill prevents the yogurt covered raisins from becoming crushed, smashed or broken, and that it is unable to use a smaller bag without creating unreasonable amounts of spillage and waste. ECF No. 50, Def.'s Statement of Material Facts at ¶¶ 12-15. Plaintiff makes no effort to refute Defendant's arguments in support of the purported slack-fill exemptions, but instead, responds with a conclusory assertion that the exemptions are irrelevant because the packaging was otherwise deceptive. But Plaintiff offers no authority following adoption of the safe harbor provisions to support her contention that the provisions do not apply.

Plaintiff argues that the Product was fundamentally deceptive because the spacing of the window on the front of the packaging would lead purchasers to believe the package was full. Plaintiff's only citation to case law is to *Papercraft Corp*., a 1963 Federal

17

Trade Commission case that found that all slack-fill was inherently deceptive issued well before the safe harbor provisions. Plaintiff relies heavily on the box of wrapping paper discussed in the 1963 case that had a clear window on most of the front of the box that permitted a view of the four rolls of paper. But the window did not extend fully to the top and bottom of the box, and consumers were unable to see that the rolls did not extend fully to the top and the bottom of the box.

But this case is nothing like the box of wrapping paper discussed in *Papercraft Corp.* A consumer who picked up the wrapping paper box would have no way to tell from lifting it that the rolls were shorter than he or she assumed. Nor could the consumer reasonably tell from feeling the box the actual length of the rolls. That is not the case here. Here the package clearly disclosed the Product's weight. And a consumer could easily discern its contents from feeling or lifting the package.

More importantly, exemptions for functional slack-fill were expressly permitted under 21 C.F.R. § 100.100(a) thirty years after *Papercraft Corp.* was decided, and expressly address situations where, as Plaintiff asserts, consumers cannot fully view the contents. *Cf. Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019) (citing 21 C.F.R. § 100.100 and stating that "[c]ontainers that include slack-fill — 'the difference between the actual capacity of a container and the volume of product contained therein' — are misleading if consumers cannot fully view the contents *and* if the slack-fill is non-functional") (emphasis added). As Defendant notes, Plaintiff cites no caselaw following adoption of the of the safe harbor provisions suggesting they are inapplicable where a window does not permit full view of the package contents. As such,

18

Defendant is entitled to summary judgment based on the safe harbor provisions.

## Plaintiff Fails to Establish the Post-Amendment Elements

Plaintiff's claim also fails in light of the 2020 Amendments to the statute.  The 2020 Amendments to the MMPA require that the plaintiff establish: "(1) that the person acted as a reasonable consumer would in light of all circumstances; (2) that the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages; (3) and that individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty."  *Abbott*, 677 F. Supp. 3d. at 947 (quoting Mo. Rev. Stat § 407.025.1(2)).

Plaintiff argues that, like her, a reasonable consumer would make a purchasing decision based upon appearance alone, and would not read the packaging of the Product, feel the contents of the Product, or even notice that the Product weighed significantly less than she expected. [5]  However, both Missouri law and the MMPA itself recognize "that reasonable consumers read product labels and packaging."  *Id*. at 950 (citing *Bell*, 673 F. Supp. 3d at 999).  Indeed, a package's additional disclosures may resolve an "ambiguity

---

[5]    Plaintiff cites to one case from the Central District of California and one case from the Missouri Supreme Court to support her argument that a reasonable consumer may not be able to determine the quantity of a product based on its listed net weight.  The decision from the Central District of California, however, discusses what showing is necessary at the motion to dismiss stage and is not relevant to Plaintiff's burdens at the summary judgment stage.  *Escobar v. Just Born Inc.*, No. CV 17-01826 BRO (PJWx), 2017 WL 5125740, at *9 (C.D. Cal. June 12, 2017).  Further, Plaintiff's second citation is to a case that does not concern the MMPA, nor does it appear to contain the quote for which it is cited.  *Foremost-McKesson, Inc. v. Davis*, 488 S.W.2d 193, 197 (Mo. 1972).

about the package's contents." *Id*. Furthermore, courts in this District have stated that a reasonable consumer would notice if a product weighed significantly less than she expects and further investigate to resolve the discrepancy between the product's size and weight. *See id*; *Bell*, 673 F. Supp. 3d at 999.

Plaintiff also argues that she provides more than "conclusory allegations" by providing studies showing that approximately 80% of consumers do not look at the label information. But recent decisions in this District have rejected the sufficiency of the same statistics at the motion to dismiss stage to plead that a consumer acted reasonably. *See Abbott*, 677 F. Supp. 3d. at 950.

This Court reaches the same conclusion. Plaintiff ignored the disclosure prominently printed on Defendant's package. ECF No. 53, Pl.'s Mem. Opp'n. Summ. J. at 17 (displaying an image of the yogurt covered raisins package with the package's weight printed on the front). *See also Abbott*, 677 F. Supp. 3d at 950. Any reasonable consumer would have realized from lifting, gently shaking the bag or feeling its contents that it was not filled to the top. *Id*. Plaintiff did not act as a reasonable consumer would in light of the circumstances, nor would the Product's packaging cause a reasonable person to enter into a transaction that resulted in damages. This is especially true here, where Plaintiff had purchased the very same Product two or three times before.

Finally, as discussed above, Plaintiff fails to demonstrate "[i]ndividual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty." Mo. Rev. Stat. § 407.025.1(2). Plaintiff simply alleges that she believed that the Product would contain more yogurt covered raisins based on

20

appearance alone. But this fails to provide objective evidence to permit the loss to be calculated with a reasonable degree of certainty. Moreover, Plaintiff got exactly what she bargained for, seven ounces of yogurt covered raisins as she readily admits. *Abbott*, 677 F. Supp. 3d at 952.

In short, the Court concludes the Plaintiff has not established the existence of all elements essential to her case. Therefore, Defendant is entitled to summary judgment.

## **CONCLUSION**

For the reasons stated above, the Court will grant Defendant's motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment is **GRANTED**. ECF No. 49.

All claims against all parties having been resolved, a separate Judgment will accompany this Memorandum and Order.

*Audrey G. Fleissig*
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of September, 2024

21